**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

VIRICE WEBB, individually and on behalf of all
others similarly situated,

           Plaintiffs,

           vs.

HUNGRY MARKETPLACE, INC.

           Defendant.

Index No. 1:21-cv-83

**CLASS ACTION COMPLAINT FOR**
**DAMAGES, RESTITUTION AND**
**INJUNCTIVE RELIEF**

**JURY TRIAL DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges, upon personal knowledge and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1.     This is a collective and class action brought by Individual and Representative Plaintiff Virice Webb ("Plaintiff") and all putative plaintiffs (collectively "Plaintiffs"), on behalf of themselves and on behalf of the Proposed Collective and Class identified below. Plaintiff and the putative Collective and Class Members were or are employed by Defendant Hungry Marketplace, Inc. ("Hungry" or "Defendant") in the United States (collective claims) and New York (class claims) during the relevant Class and Collective Periods as "Captains" including but not limited to titles such as "Catering Cadet, "Catering Captain," and "Catering General," who provided catering services to Hungry's clients.

2.     All Plaintiffs were affected by the Defendant's unlawful policy and practice of misclassifying Captains as "independent contractors" and primarily compensating them based on

a total of pre-determined number of hours estimated for each catering job, rather than the number of actual hours worked within a workweek, and any earned tips.  Through this practice, Defendant unlawfully denied Plaintiffs in the United States overtime premiums at a rate of at least one and one-half times the regular rate for all hours worked over forty in a week and engaged in recordkeeping practices that violated federal and state wage and hour laws.  In regard to Plaintiffs in New York, in violation of state wage and hour laws, Defendant failed to pay minimum wage and gap time/straight time compensation for all hours worked under forty in a workweek; failed to pay overtime premium compensation for hours worked in excess of forty hours within a workweek; failed to provide reimbursements for work-related expenses; and failed to provide Plaintiffs with proper and accurate wage statements.

3.     Plaintiffs are all similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Federal Rule of Civil Procedure 23 and have suffered the same violations pursuant to Defendant's common policies and practices.

4.     The Collective Class is made up of all persons who are or have been employed by Defendant as Captains in the United States within the period of the past three years from this action's filing date through the date of the final disposition of this action (the "Collective Class Period") and who were subject to Defendant's unlawful policies and practices of (i) misclassifying Captains as independent contractors, rather than employees; (ii) paying Plaintiffs based on a pre-determined number of hours estimated for each catering job, rather than the number of actual hours worked within a workweek; and (iii) failing to provide Plaintiffs with any method or procedure for recording actual hours worked, resulting in Defendant's failure to pay Collective Class Plaintiffs overtime premiums for all hours worked over forty during the

Collective Class period; and the failure to maintain proper recordkeeping practices in violation of the FLSA.

5.      The Class is made up of all persons who are or have been employed by Defendant as Captains in New York within the period of six years prior to the filing date (the "Class Period") and who were subject to Defendant's aforementioned unlawful policies and practices resulting in the following violations of the NYLL: (1) failure to pay the New York State minimum wage and gap/straight time compensation for all actual hours worked under forty hours within a workweek; (2) failure to pay overtime premiums for all hours worked in excess of forty hours within a workweek, (3) failure to adequately reimburse Putative Class Plaintiffs for work-related expenses, including but not limited to the cost of uniforms and cell phone charges; and (4) the failure to provide Putative Class Plaintiffs with wage statements on each payday that includes the information required by the NYLL, including the actual number of hours worked during the pay period.

6.      Plaintiffs seek relief for the Collective under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq*. and for the Class pursuant to the applicable provisions of the New York Labor ("NYLL"), §§ 190 *et seq*., to remedy the Defendant's failure to pay all wages due and for recordkeeping failures, in addition to injunctive relief.

7.      Additionally, Plaintiff Webb brings an individual claim against Defendant for retaliatory termination in violation of NYLL § 215, after his complaint to Defendant regarding its unlawful policy and practices.

## PARTIES

8.      Individual and Representative Plaintiff Virice Webb is a Catering Captain with Hungry. He presently, and at all relevant times, resides in Brooklyn, New York. In mid-February

2020, he was hired by Hungry's New York City Office located at 20 Jay St, Brooklyn, NY 11201. Since mid-Sept 2020 when he complained to his direct manager about Hungry's unlawful policies and practices, Mr. Webb has not received any work.

9.      Defendant Hungry Marketplace, Inc. is a national app- and web-based catering company offering services nationwide, including in the Greater New York City area.

10.     Defendant is a corporation incorporated under the laws of Virginia with its principal place of business and headquarters located at 4420 Fairfax Drive, #102, Arlington, VA 22203.

11.     Defendant has offices in the following 7 major cities: Atlanta, Georgia; Austin, Texas; Dallas, Texas; Boston, Massachusetts; New York City; Philadelphia, Pennsylvania, and the Washington DC metro area.

12.     Defendant's NYC office is located at 20 Jay St, Brooklyn, NY 11201.

13.     According to its company website, it employs over 350 "team members" and 200 "local chefs."

14.     Plaintiff Webb and the members of the Putative Collective and Class are presently or were formerly employed by the Defendant.

15.     At all relevant times, the Defendant has met the definition of Plaintiffs' "employer" under all applicable statutes.

## JURISDICTION & VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

17.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207, *et seq*.

18.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the action that is the subject of this action occurred in this District.

20.     This Court has personal jurisdiction over Defendant, because it has substantial business operations in New York and routinely transacts business in New York.

## STATEMENT OF FACTS

21.     Hungry Marketplace, Inc. is a national corporation with its principal place of business in Arlington, Virginia. It has offices and provides services in the following 7 major cities: Atlanta, Georgia; Austin, Texas; Dallas, Texas; Boston, Massachusetts; New York City; Philadelphia, Pennsylvania, and the Washington DC metro area.

22.     Hungry operates as tech-enabled platform for office and event catering, connecting clients to local chef entrepreneurs. It offers chef-made food production and delivery services in the form of business and event catering, contracted meal delivery services, and home meal delivery.

23.     Upon information and belief, Hungry hires "Captains" to provide all of the aforementioned forms of delivery services for the company and staff any catering events.

**Defendant's Relationship To Plaintiffs**

24.     Though Hungry chose to (mis)classify Plaintiffs and others similarly situated individuals in the role of "Captains" as "independent contractors," Hungry still retained the

absolute right to control and direct their work. The nature of the services Plaintiffs performed and the manner in which they performed these services created an employer-employee relationship, making them "employees" within the meaning of the FLSA and the NYLL.

25.     Hungry requires that Captains possess their own car and smartphone but otherwise provides all of the equipment, tools, and supplies required for Captains to perform their job duties. The supplies include but are not limited to tables, tablecloths, wire racks, sternos, pans, buckets, food boxes, dolly carts, cleaning supplies, garbage bags, paper towels, and catering bins.

26.     Hungry maintains a dress code policy that requires Captains to wear a black t-shirt, black pants, and a black cap and that they purchase it from the Company.

27.     Hungry required Captains to attend regular training sessions including but not limited to a full week of training upon hiring on how to perform all aspects of their job duties.

28.     For instance, during the week of February 17, 2020, Plaintiff Webb attended training for a full week as orientation for his position.

29.     Hungry requires Captains to periodically attend training throughout their employment, including food safety trainings.

30.     Most recently, during the summer of 2020, Hungry required Plaintiffs to attend a COVID-safety training.

31.     One example of a training that Mr. Webb attended sometime after his initial full week of training is the "NYC Pop-Up Menu Training," where a Powerpoint was presented that provided tremendous detail on how particular foods needed to be presented and served. For example, for one particular Local Chef's food, there are instructions for what exactly should be scooped into the bottom of the bowl, how the container should be held, and how different

toppings items must be lined parallel to the protein. For another, there are instructions that only "2 large tongfuls" of a food item were to be used and that a particular spoon—a soup soon—had to be used for another type of ingredient. Similar forms of detailed instructions were presented to Captains, pertaining to different chefs for various meals.

32.     Additionally, a single supervisor would monitor the work of Captains very closely throughout each step of a catering job. They were required to upload and submit photos for every pick-up and drop-off by texting their supervisor as proof that they completed the task.

33.     Mr. Webb, in particular, was directly supervised by Darel Rodwell or Brooke Caison, Catering Services Managers in NYC.  At first, Darel Rodwell supervised him directly and then halfway through his employment, Brooke Caison did. They each were in constant communication with him and reviewed his work for every order that he completed.

34.     Furthermore, for catering events where Captains had to not only deliver foods but serve them as well, they were required to videotape their setup to ensure that it met Hungry's standards and expectations.

35.     If Captains did not comply with Hungry's rigorous standards and expectations on how to perform the job, they could be reprimanded or penalized by having to attend training sessions again or be assigned a supervisor that would travel with them during their deliveries.

36.     For instance, during the summer of 2020, when Hungry decided to serve COVID-19 lunches, Mr. Webb was trained specifically on how to pack such meals and instructed to take a photo of the meal to send to his supervisor after he knocked on an individual client's door to prove it was delivered.  He was later reprimanded for not taking the photo in the manner that Hungry preferred.

## <u>WAGE AND HOUR COLLECTIVE CLASS ALLEGATIONS</u>

37.     Plaintiff brings FLSA claims on behalf of himself and other individuals similarly

situated, as authorized under 29 U.S.C. § 216(b).  The individuals similarly situated in the

Collective Class are:

> All persons who are or have been employed by Defendant as Captains in the United
> States within the period of the past three years prior to this action's filing date through the
> date of the final disposition of this action who worked over 40 hours in at least one
> workweek during the Collective Class Period and who were subject to Defendant's
> failure to pay lawful overtime premiums for all hours worked over forty during a
> workweek based on the uniform policy and practices alleged herein, including (i)
> misclassifying Captains as independent contractors; (ii) paying Plaintiffs based on a pre-
> determined number of hours estimated for each catering job, rather than the number of
> actual hours worked within a workweek, and (iii) failing to provide Plaintiffs with any
> method or procedure for recording actual hours worked.

38.     Defendant hired Plaintiff and the Collective Class Members during the Collective

Class Period.

39.     Plaintiff Virice Webb began working for Hungry in February 2020 as a "Catering

Cadet." In May 2020, he was promoted to "Catering Captain/Server."

40.      Upon information and belief, the next title that he would have been eligible for

promotion was "Catering General."

41.     While his title varied based on the number of orders he fulfilled, his job duties

remained the same.

42.     Plaintiff Webb's general duties included picking up Hungry catering supplies

from the NYC office, driving to pick up meals from Local Chefs, delivering them to clients, who

could be individuals or businesses, setting up the food for a catering event, serving the meals at a

particular location or event, cleaning up and packing up supplies, traveling back to the office,

cleaning the supplies, and putting supplies away.

43.     While a majority of the orders that Plaintiff Webb fulfilled for Hungry required him to travel within NYC, a handful of the orders that he fulfilled for Hungry required him to much farther locations such as Pellon, New York; Carmel, New York; Milford, New Jersey; and Brewster, New York.

44.     Plaintiff Webb received work in one of two ways: (1) he could either sign himself up for a particular order through the company website; or (2) his direct manager would send links to his phone number to confirm an order.  By the summer of 2020, Plaintiff Webb no longer had the ability to assign himself to orders and received orders exclusively through his managers who would send him links for various orders.

45.     Often times, he would receive multiple confirmation links for orders scheduled for the same time window.

46.     The link would contain the following language: "Please follow the link to confirm for Hungry Order [No.] on [DATE] from [Time] to [Time] on the services dashboard: LINK TO WEBSITE."

**Hungry's Timetracking Policies**

47.     For a majority of catering orders, Hungry required Plaintiffs to utilize its company app. Each order contained pre-determined estimates of the time it would take for Plaintiffs to complete each step of the job.

48.     Upon information and belief, this was the exclusive method of time tracking utilized by Hungry for the Plaintiffs.

49.     Within the app, for each order, there was an "arrive by" time for picking up Hungry-owned supplies at the office, "depart by" time for when they should expect to leave the office, "arrive by" time for when they should expect to arrive at a Local Chef's location to pick

up the food, "depart by" time for when they should leave the Local Chef's location, an "arrive by" time for when they should arrive to the client's location, and then a "depart by" time for when they should leave the client's location.

50.     For the steps involving meal pick-ups and drop-offs, Plaintiffs were required to check in via the app as well as text photos to their direct supervisor. If they needed to serve meals as well at a client location, then they needed to send videos too.

51.     There was no allotted step or time window for traveling back to the office to return supplies after the order was completed or cleaning and storing supplies away, which Plaintiffs were required to do.

52.     Thus, Defendant, pursuant to commonly enforced policies and practices, failed to provide Plaintiffs with any method or procedure for recording actual hours worked.

53.     Due to traffic and at times, the long distances of where they would be traveling from, Plaintiffs would spend at least 1-3 hours traveling back to the office.  On some occasions, if they were required to complete catering jobs in upstate New York, they would spend up to 6 hours traveling back to the office.

54.     Once Plaintiffs returned to the office, they would spend additional time at the office washing the equipment and placing the supplies back where they belonged.

55.     Moreover, they could be asked to wait for a package or to complete other tasks depending on the needs of the office.

56.     Defendant was aware that Plaintiffs spent extra time after the "depart" time listed in the app traveling back to the office and the additional work performed at the office.

57.     Often times, there was a manager present on site that would see Plaintiffs return to the office with supplies and spend time in the office finishing up their job duties.

58.     Despite knowing that Plaintiffs worked such hours in addition to those tracked in the company's app, Defendant failed to provide compensation for these hours.

59.     Defendant did not provide Plaintiffs and others similarly situated with pay statements or other documentation that reflected the actual number of hours that Plaintiffs worked or any information at all other than the total amount of pay for the previous week.

**Plaintiffs Worked in Excess of 40 Hours**

60.     Plaintiffs' hours fluctuated greatly on a week to week basis, depending on the number of orders and the distance they were required to travel for each.

61.     Plaintiffs sometimes worked in excess of 40 hours per week, for which they were not compensated overtime premiums for.

62.     For example, in New York, for approximately six weeks during the summer of 2020 from late June through early August, Plaintiffs tended to work in excess of 40 hours per week, because the volume of work increased due to the added task of delivering COVID meals.

63.     For instance, during the workweek of June 20, 2020 through June 26, 2020, Mr. Webb worked every day. During that week, he worked 40 hours completing catering orders and delivering COVID meals.  He then worked an additional 13 hours traveling back to the office, cleaning, and storing away the supplies at the office. This is just one example of actual overtime hours he worked within a workweek during the summer of 2020 and for which he was not compensated for.

**Hungry's Compensation Policy**

64.     Upon information and belief, pursuant to a common compensation scheme, Hungry compensated Plaintiffs per order. The amount paid per order was based on a fixed estimate of hours—which did not include all compensable activities under federal wage and hour

law such as the amount of time spent traveling back to the office and performing work at the office—and tips.

65.     Upon information and belief, the flat rate of pay varied for Captains but for a Catering Captain, such as Mr. Webb, the rate of pay for catering orders was approximately $20/hour and was intended to cover both Plaintiff's hourly wage for labor he performed and a fixed estimate for gas and tolls.

66.     On September 17, 2020, Mr. Webb texted Ms. Caison that he noticed he was driving to upstate New York with no gas money and required to drive six hours back and forth. Ms. Caison responded that the "flat rate is meant to cover gas and tolls."

67.     Upon information and belief, during the summer of 2020, Captains in New York were paid $3.00 flat for each COVID meal that that they delivered.

68.     Hungry paid a total sum to Plaintiffs each week on Friday for all of the work from the previous week; each pay period was 1 week-long and ran from Saturday through Friday.

69.     Hungry did not provide Plaintiffs with a breakdown of the compensation they received, including the rate of pay, how much of the rate of pay was allotted for gas and tolls, or the number of hours worked, per weekly pay period.

70.     Instead, Hungry prepared invoices for the Plaintiffs without any pay detail; the only information regarding pay was the total amount of pay for the previous week of work.

## WAGE AND HOUR CLASS ACTION FACTUAL ALLEGATIONS

71.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

> **State Unpaid Wages**: All persons who are or have been employed by Defendant as Captains in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period and who during at least one workweek

were subject to Defendant's failure to pay minimum wage and/or gap/straight time for all compensable activities totaling hours under 40 hours; failure to pay overtime premium for hours worked above 40; failure to reimburse necessary work-related expenses; and/or failure to provide lawful pay statements, based on the uniform policies and practice alleged herein, in violation of the NYLL.

72.     Plaintiffs incorporate by reference the facts alleged in the preceding paragraphs above.

73.     <u>Numerosity</u>: The Proposed Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis, allege, that during the relevant time period, Defendant employed ***at least*** thirty-five individuals who satisfy the definition of the Proposed Class.

74.     <u>Typicality</u>: Plaintiff's claims are typical of the members of the Proposed Classes. Plaintiff is informed by other Captains that the Putative Members of the Class were subject to the same aforementioned unlawful policies during the Class Period. Plaintiff was compensated in the same manner. All Plaintiffs were subject to Defendant's unlawful policies and practices alleged more fully above.

75.     <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

76.     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Proposed Class and has retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

77.     Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class, including but not limited to:

a.  Whether members of the Proposed Class were required to work under Defendant's direction and control;

b.  Whether Defendant improperly classified members of the Proposed Class as "independent contractors" instead of "employees" within the meaning of NYLL;

c.  Whether Defendant unlawfully failed to pay appropriate minimum wage compensation to members of the Proposed Class in violation of the NYLL;

d.  Whether Defendant unlawfully failed to pay "straight time" wages in violation of the NYLL;

e.  Whether Defendant unlawfully failed to pay appropriate overtime compensation to members of the Proposed Class in violation of the NYLL;

f.  Whether Defendant failed to reimburse members of the Proposed Class who paid for business-related expenses in violation of the NYLL;

g.  Whether Defendant maintained lawful wage and hour records under the NYLL;

h.  Whether Defendant's actions were "willful" under the NYLL.

78.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

79.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class and because a class action is superior to

other available methods for their fair and efficient adjudication of this litigation. Defendant's uniform policies and practices denied the Proposed Class the wages to which they are entitled to. The damages suffered by the individual members of the Proposed Class are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior, because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

80.     Plaintiff intends to send notice to all members of the Proposed Class to the extent required by Rule 23. The names and addresses of the Proposed Class will be available from Defendant.

81.     Hungry did not reimburse Plaintiffs for business-related expenses for the benefit of their employer, such as the cost of purchasing the Hungry uniform and the cell phone charges incurred in using the company app to fulfil catering orders, resulting in unlawful deductions from Plaintiffs' wages.

82.     On September 17, 2020, Mr. Webb texted Ms. Caison that he noticed he was driving to upstate New York with no gas money and required to drive six hours back and forth. Ms. Caison responded that the "flat rate is meant to cover gas and tolls."  After this text exchange and only in this particular instance, the company agreed to provide an additional payment to Mr. Webb to compensate his out-of-pocket gas costs.

83.     The total compensation that Plaintiffs received each week did not include pay for all compensable, work-related activities (such as the amount of time traveling back to the office and performing work at the office), which resulted in a lack of compensation for the total number of hours actually worked below and up to 40 hours per workweek i.e. "straight time" pay as well

as on some occasions, overtime premium pay for hours worked in excess of 40 hours in a workweek.

84.     Hungry also did not provide Plaintiffs with wage statements containing a breakdown of their weekly compensation, including the rate of pay, how much of the rate of pay was allotted for gas and tolls, or the number of hours worked within each pay period.

## INDIVIDUAL ALLEGATIONS INVOLVING RETALIATION

85.     On or around September 17, 2020, Plaintiff Webb spoke and exchanged texts with Ms. Caison regarding a catering order, where he was required to travel to upstate New York. Mr. Webb opposed and complained in good faith to Ms. Caison about having to travel long distances without reimbursement for work-related expenses.

86.     On September 25, 2020, Mr. Webb sent a text to Ms. Caison asking if he still was employed by Hungry, to which she responded that he was a "contracted worker," that "each order was its own contracted work agreement," and that she would let him know if she found another contract that was a "good fit" for him.

87.     On October 7, 2020, Mr. Webb sent a text to Darel Rodwell that he has not worked since the day he complained and that nearly a month has passed that he received work; he has not received a response.

88.     To date, Hungry has not provided work to Mr. Webb since he last communicated his complaint to Ms. Caison on September 17, 2020.

89.     In early December 2020, Mr. Webb could no longer access his Hungry account.

90.     Mr. Webb was terminated in retaliation for his complaint to Ms. Caison regarding the lack of sufficient compensation for work-related expenses.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Fair Labor Standards Act: Unpaid Overtime Wages)

91.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

92.     Plaintiff consents in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiff's written consent form is attached hereto. Plaintiff anticipates that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

93.     At all relevant times, Defendant constitutes as an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

94.     At all relevant times herein, Plaintiff and the members of the Proposed Collective Class have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

95.     At all relevant times, upon information and belief, Defendant's gross revenue has exceeded $500,000.00.

96.     The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

97.     During their employment with Defendant, within the applicable statute of limitations, Plaintiff and other Collective Class members sometimes worked in excess of forty hours per workweek without overtime compensation.

98.     Despite the hours worked by Plaintiff and the Collective Class members, Defendants, willfully, in bad faith, and in knowing violation of the Fair Labor Standards Act, failed and refused to pay them overtime compensation.

99.     Based on the policies and practices articulated above, Plaintiffs were uniformly denied FLSA mandated overtime premiums.

100.    Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the Putative Collective, Defendant has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

101.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §§ 216(b) and 255(a).

102.    Because Defendant's violations of the FLSA are willful, a three-year statute of limitation applies. 29 U.S.C. § 255.

103.    Plaintiff, on behalf of himself and the Collective Class, seeks the recovery of attorneys' fees and costs to be paid by Defendants provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### (New York Labor Law: Unpaid Overtime Wages)

104.    Plaintiff alleges and incorporate by reference the allegations in the preceding paragraphs.

105.    At all relevant times herein, Plaintiff and the members of the Proposed Collective Class have been entitled to the rights, protections, and benefits provided under the NYLL.

106.    At all relevant times herein, Defendant has been an employer within the meaning of the New York Labor Law.

107.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations applies to Defendant.

108.    Defendant has failed to pay Plaintiff and the Putative Rule 23 Class the overtime wages to which they are entitled under the New York Labor law.

18

109.    By Defendant's failure to pay Plaintiff and the Rule 23 Class members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully within the meaning of N.Y. Lab. Law §663 violated the N.Y Lab Law. Law Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

110.    Furthermore, Defendant has violated NYCRR 142-2.2. and NYLL §§191 and 193 by failing to pay Plaintiff and the Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the Class Period.

111.    Due to Defendant's violation of the NYLL, Plaintiff and the Rule 23 Class Members are entitled to recover from Defendant their unpaid overtime wages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>
**(Failure to Pay Lawful Minimum Wages and "Gap Time" Wages in Violation of NYLL §§ 191, 193 and 652 and Article 19)**

112.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

113.    At all relevant times, Plaintiff and the members of the Proposed Collective Class have been entitled to the rights, protections, and benefits provided under the NYLL.

114.    At all relevant times, Defendant has been an employer within the meaning of the New York Labor Law.

115.    The minimum wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

116.    Defendant has failed to pay Plaintiffs and the Putative Class the minimum wages to which they were entitled to under the New York Labor Law.

117.    By Defendant's failure to pay Plaintiffs and the Putative Class minimum wages, it has willfully violated the New York Labor Law Article 19, §§ 652 *et seq*., and the supporting New York State Department of Labor Regulations.

118.    Due to Defendant's violations of the New York Labor Law, Plaintiffs and the Putative Class are entitled to recover from Defendant their unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

119.    Similarly, Defendants have failed to pay Plaintiffs and the Putative Class the difference between the New York State minimum wage and their hourly rate of pay as determined by Defendant for all hours worked in a workweek, a practice that is unlawful under the New York Labor Law.

120.    Specifically, Defendants failure to pay these wages – known as "gap time" wages under the relevant precedent - is prohibited by Section 193 of the New York Labor Law.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Unlawful Wage Deductions by Separate Transactions in Violation of NYLL §§ 193 and 198(b))**

121.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

122.    At all relevant times herein, Plaintiff and the members of the Putative Class have been entitled to the rights, protections, and benefits provided under the NYLL.

123.    At all relevant times, Defendant has been an employer within the meaning of the NYLL.

124.    The provisions related to the failure to reimburse business-related expenses of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant.

125.     Section 193 prohibits deductions from employees' wages unless the deductions are expressly authorized and for the benefit of the employee and limited to the enumerated categories of permissible deductions.

126.     Defendant unlawfully required that Plaintiffs bear the expenses of their employment, including but not limited to the cost of their uniforms and cell phone charges, in violation of NYLL §§ 193 and 198(b).

127.     As a result of Defendant's unlawful conduct, Plaintiff and the Putative Class are entitled to an award of damages equal to all wages unlawfully deducted and all unlawful payments required by separate transaction, in an amount to be determined at trial, plus pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))**

128.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

129.     At all relevant times, Plaintiff and the members of the Putative Class have been entitled to the rights, protections, and benefits provided under the NYLL.

130.     At all relevant times, Defendant has been an employer within the meaning of the NYLL.

131.     The record-keeping provisions of Article 19 of the New York Labor Law and its supporting regulations applies to Defendant.

132.     Defendants did not provide Plaintiffs and the Putative Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

133.     NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

134.    As a result of Defendant's unlawful conduct, Plaintiff and the Putative Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR SIXTH CAUSE OF ACTION
### (New York Labor Law: Retaliation)

135.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

136.    At all times relevant herein, Plaintiff was employed by Defendant within the meaning of the NYLL, § 215.

137.    At all times relevant herein, Defendant was a covered entity within the meaning of the NYLL, § 215.

138.    In violation of the NYLL, Defendant retaliated against Plaintiff by terminating him and failing to provide him any work in response to him engaging in the protected activity of making complaints to his supervisor regarding Defendant's unlawful policies and practices.

139.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to an award of all damages available under the NYLL, in an amount to be determined at trial, costs and attorney's fees, and liquidated damages.

140.    A notice of this action was provided to the New York State Attorney General pursuant to NYLL § 215 prior to the filing of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Webb, on behalf of himself and all members of the Proposed Collective and Class, prays for relief as follows:

A.    That the Court determine that this action may proceed as a collective action

pursuant to 29 U.S.C. § 216 and a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.      That the Court determine that Plaintiff's counsel and Plaintiff Virice Webb can adequately represent the interests of the class as class counsel and class representatives, respectively;

C.      That the Court declare that Defendant has violated the Fair Labor Standards Act as to Plaintiff Webb and the Putative Collective;

D.      That the Court declare that the Defendant has violated the provisions of the New York Labor Law as to Plaintiff and Putative Class;

E.      That the Court declare that Defendant's violations as described above are found to be willful;

F.      That the Court award Plaintiff and the Putative Collective and Class for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

G.      That the Court award reasonable attorney's fees and costs pursuant to the NYLL and 29 U.S.C. § 216(b) and/or other applicable law;

H.      That the Court enjoin Defendant to cease and desist from unlawful activities in violation of the FLSA and the NYLL; and

I.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff on behalf of himself and all other similarly situated persons demand a trial by jury as to all issues so triable.

DATED:     January 6th, 2021
New York, New York

Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004
(646)-430-7930 (main)
(646)-349-2504 (fax)

*Counsel for Plaintiffs and the Putative Collective and Class*