**THE LAW OFFICE *of* CHRISTOPHER Q. DAVIS**

**WORKING SOLUTIONS NYC**

**VIA ECF**

July 23, 2021

Honorable Marcia M. Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

   Re: *Webb, et al. v. Hungry Marketplace, Inc.*, Civil Action No. 1:21-cv-00083 (EK) (MMH)

Dear Judge Henry:

  This joint letter is submitted by Plaintiff Virice Webb ("Plaintiff" or "Mr. Webb") and Defendant Hungry Marketplace, Inc. ("Defendant" or "Hungry"), requesting that the Court approve the Settlement Agreement reached between the parties, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Settlement Agreement is appended hereto as **Exhibit 1**.

  **I.** **The Proposed Settlement Agreement**

  This action involves collective and class claims brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by Individual and Representative Plaintiff Virice Webb. Although the action was commenced as a collective action with respect to the FLSA claims and a putative class action with respect to the NYLL claims, the parties reached the proposed settlement prior to the matter being conditionally certified as a collective action or certified as a class action. There are also no opt-ins to this action. Thus, the only parties to the settlement are the named plaintiff and the named defendant.

  Mr. Webb is an alleged former "Captain" who performed work for Hungry from February 2020 through September 2020. His alleged job duties consisted of picking up Hungry catering supplies from the office in Brooklyn, driving to pick up meals from local chefs and delivering them to clients who ranged from individuals to businesses, setting up food and serving it for various catering events and traveling back to the office to return and clean the supplies.

  Plaintiff alleges that Hungry misclassified him as an independent contractor rather than an employee and thus failed to provide him with proper compensation for all hours worked and other related protections as required under the FLSA and the NYLL. Additionally, Mr. Webb brought a

claim under the NYLL alleging that Hungry unlawfully retaliated against him after he complained in or around September 2020 about what he believed to be unlawful policies and practices. Defendant vigorously denies each and every allegation made by Plaintiff and fervently contends that Plaintiff was properly classified and compensated and, therefore, is not entitled to any relief from Hungry under the FLSA, NYLL, or otherwise.

After negotiations over a period of several months and discussions regarding Plaintiff's claims and Defendant's defenses, the Parties arrived at a resolution where Defendant will pay a total of **$35,000.00**, inclusive of attorneys' fees and costs to Plaintiff and his counsel in exchange for mutual releases and promises contained in the Settlement Agreement. For the reasons outlined below, the Parties believe that the terms and conditions of the Settlement Agreement are fair, reasonable, and in their mutual best interests. The Parties, therefore, request that the Court approve the settlement as a fair and reasonable compromise of the Parties' dispute.

## II.     The Court Should Find the Settlement Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 1:14-cv-00311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016).

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The following factors have been held to be relevant to an assessment of fairness of an FLSA settlement: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Cohetero v. Stone & Tile, Inc.*, 16-CV-4420, 2018 WL 565717, at *2–3 (E.D.N.Y. Jan. 25, 2018) (applying the aforementioned factors discussed in *Wolinsky*).

A. *Plaintiff's Range of Possible Recovery*

The first factor weighs in favor of approval. Plaintiff's counsel has estimated that if Mr. Webb were to successfully establish at trial that he was misclassified as an independent contractor, then his *maximum* recovery based on his individual allegations of unpaid straight time and overtime, an estimate of ten months of lost pay due to retaliatory termination and pay statement and notice violations under the NYLL—without accounting for liquidated damages—would be approximately $38,040.00. Based on the Settlement Agreement, Mr. Webb's individual net recovery would be $22,490.25 (after attorney's fees and costs), which is nearly 60 percent of his anticipated maximum recovery. Mr. Webb's settlement compared to his maximum anticipated recovery is well within the range of what Courts in this this Circuit have found to be reasonable. *See Chowdhury v. Brioni Am., Inc.*, 16-cv-344, 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29, 2017) (finding net settlement of 40% of FLSA plaintiffs' maximum recovery reasonable); *Redwood v. Cassway Contracting Corp.*, No. 16-cv-3502, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (finding net settlement of 29.1% of FLSA plaintiffs' maximum recovery reasonable). Accordingly, the Court should find that the settlement sum allocated to Plaintiff by the Parties in the Settlement Agreement is reasonable.

B. *The Settlement Agreement Enables the Parties to Avoid Anticipated Burdens and Expenses in Establishing Their Respective Claims and Defenses and There Are Serious Litigation Risks Faced by the Parties*

The second and third factors also weigh in favor of approval. A settlement avoids a trial on the merits that would have an uncertain potential outcome. *See Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012). In reviewing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiffs against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

In light of these factors, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter, such as whether or not Defendant actually misclassified Plaintiff as an independent contractor that resulted in a lack of proper pay including but not limited to overtime and straight time pay, pursuant to the FLSA and NYLL, and whether Plaintiff's engagement with Defendant was terminated due to retaliation. The Parties acknowledge the uncertainty surrounding further litigation of the issues in this action, and the settlement allows them to completely eliminate this risk to both Parties, particularly where a determination of Plaintiff's status as an employee or independent contractor would potentially yield an all or nothing outcome. Moreover, the Parties are very much in the beginning phases of litigation and have yet to accrue substantial litigation costs, which they would certainly accrue if this case were to proceed to class action litigation, full discovery, depositions, motion practice, and a trial.

Plaintiff is willing to resolve his claims because he will receive immediate payment and relief, which for him outweighs the uncertainty of extended litigation, the significant risk of a determination that Plaintiff is an independent contractor not entitled to any relief under the FLSA or NYLL, and associated litigation costs including depositions, motion practice, and a potential

3

trial for only the *possibility* of relief. *See Reyes v. Buddha-Bar NYC*, 08-CV-2494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and discussing how "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation").

    C.  *The Settlement Agreement is the Product of Arm's-length Bargaining between Experienced Counsel*

The Parties, through their respective counsel, have engaged in good faith, arm's-length negotiations. Plaintiff's counsel provided Defendant's counsel with a detailed breakdown of Plaintiff's anticipated damages for his wage and hour and retaliation claims. Plaintiff is represented by The Law Office of Christopher Q. Davis, PLLC a New York based law firm that almost exclusively practices plaintiff-side labor and employment law and specializes in wage and hour individual and class actions. Defendant is represented by Gordon Rees Scully Mansukhani, LLP, a nationwide law firm that regularly represents employers in labor and employment law matters, including wage and hour actions.

    D.  *No Possibility of Fraud or Collusion.*

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients throughout the negotiations on the benefits and risks of continued litigation. Moreover, because Plaintiff no longer worked for Defendant prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace. *See Cisneros v. Schnipper Rest. LLC*, 13 CV-6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion are "not as relevant when the plaintiffs no longer work for the defendant").

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

    E.  *Mutual General Releases and Mutual Non-Disparagement Provisions*

Furthermore, the Settlement Agreement does not contain any terms that would militate against the Court's approving it. The Agreement contains a mutual non-disparagement provision that includes the requisite "carve-out" for truthful statements and provides that Plaintiff is not precluded from truthfully discussing his experience litigating the FLSA and NYLL claims. *See Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (noting that "not all non-disparagement clauses are per se objectionable," but that "if the provision would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case") (internal quotation marks and citation omitted).

The Agreement also contains a permissible, broad mutual release, negotiated by competent counsel on both sides. Since *Cheeks* was decided, courts in districts of this Circuit have approved mutual general releases in a number of cases, particularly where, as here, Plaintiff is no longer working for Defendant. *See Martin v. NYC Crane Hoist & Rigging*, LLC, 2020 U.S. Dist. LEXIS 168685, at *2 (S.D.N.Y. Sep. 15, 2020) (stating "[g]enuinely mutual general releases may be approved, however, if the plaintiff is no longer employed by the defendant."); *Guan v. Long Island Bus. Institute, Inc.*, 2020 U.S. Dist. LEXIS 47088, at *8-9 (E.D.N.Y. Mar. 18, 2020) (approving a mutual general release in an FLSA settlement where "the releases of claims in the Settlement Agreement are mutual, binding both Plaintiffs and Defendants and thereby 'assuaging concerns that the waiver unfairly benefits only Defendants.'") (internal citations omitted); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("there is nothing inherently unfair about a release of claims in an FLSA settlement"); *Geskina v. Admore Air Conditioning Corp.*, 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017) ("A general release of the kind proposed in this case, with [a] former employee[ ] who ha[s] no ongoing relationship with the employer, makes sense in order to bring complete closure") (internal quotations omitted); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) (approving broad general release in non-class FLSA settlement on condition that the releases be mutual).

In addition, the Settlement Agreement contains a clause restricting future employment that is identical to clauses previously approved within this Circuit. *See Vargas Ortiz v. Three Star on First*, No. 19 Civ. 928 (OTW), 2019 WL 4013981, at *3 (S.D.N.Y. Aug. 26, 2019) (finding that an agreement that had a no future employment clause "lack[ed] certain objectionable provisions that court have found fatal in other proposed FLSA settlement"). Furthermore, a non-publication clause similar to the one in the Settlement Agreement has been routinely upheld in this Circuit. *See Chowdhury*, 2017 WL 5953171 (S.D.N.Y. Nov. 29, 2017); *Lola v. Skadden, Arps, Slate, Meagher & Flom LLP*, 13 Civ. 5008 (RJS), 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016).

### III. The Court Should Approve the Requested Attorneys' Fee and Costs as Reasonable

Under the proposed Settlement Agreement, Plaintiff's attorneys' fees and costs are Twelve Thousand Five Hundred Nine Dollars and Seventy-Five Cents ($12,509.75). Plaintiff's counsel submits that the requested fees and costs are reasonable. A court may calculate a reasonable attorneys' fee either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Pursuant to the written retainer agreement between The Law Office of Christopher Q. Davis, PLLC (the "Firm") and Plaintiff, Plaintiff agreed that the Firm would represent him on a contingency basis and that the Firm would retain 33.33% of any gross recovery, plus the costs and disbursements incurred by the Firm. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. *Santos v. EL Tepeyac Butcher Shop Inc.*, 15-CV-814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 13-CV-3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sep. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"); *Febus v. Guardian*

*First Funding Grp.*, LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[A] fee that is one-third of the fund is typical" in FLSA cases"); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09-CV-486, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012) ("Courts in this District generally find 33% of the overall settlement, mirroring the one-third contingency fee arrangement to be reasonable.").

Here, the Firm is requesting this Court award a total of $12,509.75 in attorneys' fees and costs and expenses to fully satisfy any claim that the Firm may have for attorneys' fees or costs associated with representation of Plaintiff. This total amount includes 33.33% of the gross recovery and associated costs. The actual costs and disbursements incurred by the Firm in this case total $843.08 as of the date of this letter motion. An itemized list of these costs and disbursements are attached to this letter as **Exhibit 2**.

The actual lodestar amount in this matter as of the date of this letter motion is calculated at $13,679.99. The time records containing the lodestar amount for this matter are attached hereto as **Exhibit 3**. The lodestar amount was calculated using an hourly rate of $400.00 for partner Christopher Davis; an hourly rate of $200.00 for associate Hajar Hasani; an hourly rate of $100.00 for the law clerk; and an hourly rate of $75.00 for the paralegal. These rates are comparable to what is typically awarded for attorneys, law clerks, and paralegals. In this District, hourly rates of $300-$450 for partners, $200-$325 for senior associates, $100-200 for junior associates and $75-$100 for law clerks have been regularly awarded in employment cases. *See e.g. Toussie v. Allstate Insurance Company*, No. 15-CV-5235 (ARR), 2019 WL 2435852, at *26, (E.D.N.Y. Feb. 6, 2019) (approving an hourly rate of $450 per hour for a partner, $300 per hour for a senior associate, $200 per hour for a first year associate and $100 per hour for a paralegal); *Griffin v. Astro Moving & Storage Co. Inc.*, No. 11-CV-1844-(MKB), 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) ("[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates.") (internal quotation marks omitted); *Pall Corp. v. 3M Purification Inc.,* No. 97–CV–7599, 2012 WL 1979297, at *4 (E.D.N.Y. June 1, 2012) (citation and internal quotation marks omitted) (collecting cases); *Cadles of Grassy Meadows II, L.L.C. v. St. Clair,* No. 10–CV–1673, 2012 WL 6617448, at *2 (E.D.N.Y. Dec. 18, 2012) ("In the Eastern District of New York, courts have determined reasonable hourly rates to be approximately $300–[$]450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.") (internal quotation marks omitted) (collecting cases).

Plaintiff is represented by The Law Office of Christopher Q. Davis, PLLC, a firm that almost exclusively practices plaintiff-side labor and employment law. Mr. Davis has been practicing law for over 18 years with a primary focus on litigation of labor and employment law cases. Prior to entering private practice, Mr. Davis was employed as an Assistant District Attorney in the Manhattan District Attorney's Office. Following his tenure as an Assistant District Attorney, he entered private practice as an Associate with the employment law firm Thompson Wigdor LLP ("TW"), now Wigdor LLP, assuming responsibility over several plaintiff and management-side lawsuits. After leaving TW in 2009, Mr. Davis gained employment with The Ottinger Firm, P.C., and served as the firm's Managing Attorney. While with The Ottinger Firm, he was responsible for all aspects of the firm's operations, including managing and serving as lead attorney on numerous nationwide class and collective actions. He has extensive experience

managing and litigating overtime lawsuits, including lawsuits brought under the FLSA. Mr. Davis left the Ottinger Firm to become the Partner of the Employment Practice at Stoll, Glickman & Bellina ("SGB") and then ultimately in July 2014, left SGB to start his own practice, The Law Office of Christopher Q. Davis, PLLC. Ms. Hajar Hasani is an associate at The Law Office of Christopher Q. Davis, PLLC and worked as a former Law Clerk for the Firm drafting legal documents and assisting with each phase of employment litigation, including participating in the Firm's established class action practice.

### IV. Conclusion

For the reasons set forth above, the Parties respectfully request that the Court approve the Settlement Agreement. Plaintiff's counsel further requests that the Court approve the attorneys' fee award as fair and reasonable.

Should you have any questions, please do not hesitate to contact us. We thank the Court for its time and consideration.

Sincerely,

_____

Christopher Q. Davis
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004

cc: All counsel of record (via ECF)